In the Matter of the Application of JAMES E. HUSHION, Individually and as Comptroller of the City of Yonkers, N. Y., Petitioner, Appellant, for a Final Order Directed to SYLVESTER J. BARKER and Others, Constituting the Common Council of the City of Yonkers, N. Y. (JOSEPH F. LOEHR, as Mayor of the City of Yonkers, N. Y.), ALBERT L. FIORILLO, as President of the Common Council of the City of Yonkers, N. Y., and FRANCIS J. HEAFY, as City Clerk of the City of Yonkers, N. Y., Respondents.

Second Department, February 21, 1938.

*Leonard G. McAneny, Corporation Counsel [Morris L. Rosenwasser* and *Harold T. Garrity* with him on the brief], for the appellant.

*Harry J. Laragh,* for the respondents.

CARSWELL, J. The common council of the city of Yonkers is vested with the power, under section 75 of the Second Class Cities Law, to diminish or reject any items contained in the annual estimate submitted to it by the board of estimate and apportionment except certain specified items. This grant of power contemplates an honest and not a wanton exercise of discretion by the common council.

Here the common council has eliminated entirely certain items which relate to the furnishing of essential services in the administering of the city government. No paring down was indulged in on the theory that the particular items were excessive; they have been eliminated entirely. The common council, as a matter of power, had the legal right, if not the moral right, to do this, even though so doing is productive of disorder and chaos in administration. Honesty of action in this respect may be enforced only by political means. Courts may not review such an exercise of legislative power. Therefore, the action of the council, not being subject to judicial review in this respect, may not be disturbed if the action was timely.

This brings us to an interpretation of section 75 so far as it relates to the question of time within which action by the common council must be taken. When interpreting statutes, courts will not indulge in a strained construction so as to extend power under them if such a strained construction is productive of disorder and chaos in the administration of government. Such a form of interpretation is justifiable, if ever, only where the action sustained is free from such objectionable results.

The statute (§ 75) provides that the board of estimate and apportionment shall submit an estimate to the common council. It is silent as to whether the submission is to be at a special or a regular session or meeting of the council or in some other manner.

There being no statutory limitation, it may be submitted at any meeting or session.

Here, pursuant to section 75, the annual estimate was delivered to the common council on December 10, 1937. It was ordered on file that day and automatically referred to the finance committee. That same day, on motion, a public hearing upon the proposed estimate or budget was ordered to be held on December 17, 1937. The estimate, therefore, was indisputably "submitted to it," the common council, and acted upon on December 10, 1937. After a hearing (which had been ordered) section 75 required that the common council " within thirty days after such estimate shall have been submitted to it " shall adopt the estimate submitted or shall diminish or reject items and adopt the estimate as amended. The thirty days expired January ninth, which was a Sunday; therefore, the common council had until January tenth to act. Under section 35 of the Second Class Cities Law legislative acts must be by ordinance, and an ordinance may not be passed on the day it is introduced except by unanimous consent. When an ordinance amending the estimate was introduced on January 10, 1938, its immediate consideration was objected to and, therefore, the matter went over to the following day, January eleventh, or some subsequent day.

Even if the estimate might be amended by means other than by ordinance (the availability of which need not now be decided), such other means were not availed of on January 10, 1938. The thirty-day statutory provision and action thereunder required that whatever the form of action taken, it should be of so timely a nature that action upon the estimate itself should be concluded " within " the thirty-day period. By delaying the offering of amendments, through whatever medium this was done, the common council could not extend its time beyond the thirty-day statutory period within which it must act. " Their neglect to perform their *duty* at the time required can not nullify the statute." (*People* v. *Supervisors of Chenango*, 8 N. Y. 317, 330.) When it failed to act on January 10, 1938, its power to exercise its discretion to make changes, disruptive or otherwise, or to reject or diminish particular items, lapsed or became exhausted. All that was left, then, was a mere naked non-discretionary power to adopt the budget as submitted. It may not, by failure to act, frustrate the mandatory thirty-day provision requiring action.

The history of legislation on this point furnishes confirmation of the view that the present statute contains a positive or mandatory limitation of time within which the council must act. Prior to 1906 the Second Class Cities Law made no provision as to time

limit within which the common council should act after submission of the estimate to it. (Laws of 1898, chap. 182, § 96; Laws of 1899, chap. 581, § 7, amending § 96; Laws of 1900, chap. 415, § 1, chap. 433, § 1, both amending § 96.) The first and present limitation is contained in Laws of 1906, chapter 473, section 75, continued and re-enacted as section 75 of the Second Class Cities Law (Laws of 1909, chap. 55).

Hence, at this stage, the time to exercise its discretion to reject or diminish items in the budget having expired, the act of formal adoption of the budget as submitted degenerated to and became a mere ministerial act, the performance of which may properly be compelled by mandamus. (1 McQuillan on Municipal Corporations [2d ed.], §§ 392, 391; 1 Dillon on Municipal Corporations [5th ed.], § 246; 4 id. § 1516; *Supervisors* v. *United States*, 71 U. S. 435.)

All further proceedings of the mayor and the council thereafter, under this view, became legal futilities or nullities.

Apart from the foregoing a majority of the court are of the opinion that the mayor had power under section 38 to veto the ordinance which deleted various items from the estimate submitted to the council and as thus amended belatedly adopted the budget. The time within which the council might act to override that veto, being " within thirty days," may not have expired. But that veto has not been overridden and it has been virtually conceded that no attempt will be made by the council to do so. This view results in the same conclusion that the order should be reversed and the motion granted in so far as it relates to the ministerial act of adopting the budget.

On either view the purported ordinance of January 11, 1938, has no efficacy.

The order should be reversed on the law, motion granted, and the common council directed to adopt, as a budget, the estimate submitted.

LAZANSKY, P. J., JOHNSTON and ADEL, JJ., concur; TAYLOR, J., concurs in result.

Order reversed on the law, motion granted, and the common council directed to adopt, as a budget, the estimate submitted.