Bergan, J.
(dissenting). The issue here is this: Assuming the Mayor has the power to veto an ordinance or resolution of the Common Council which reduces the annual estimate, in a case where the council has acted within the time limit of 30 days, can the Mayor’s veto, which postpones action to beyond 30 days, result in an absolute duty on the council to adopt the estimate as first proposed?
The Cohoes Charter language has been copied verbatim from the Second Class Cities Law and from its predecessor statutes. Its language has many exact counterparts in other cities of the State; the decision now being made necessarily affects the budgetary relations between the Mayors and legislative bodies of a number of cities.
In 1896 Commissioners to Propose Legislation for Cities of the Second Class, of which former Chief Judge' Eael was chairman, reported to the Legislature a proposed statute. This contained language which in material parts is identical with the Cohoes Charter providing for a Board of Estimate and Apportionment and requiring it to prepare estimates of expenditures and revenues which it shall submit to the Common Council which “ may adopt such estimate as is submitted to it or rliminisb 0r reject any item therein contained, and adopt the estimate as thus amended; but it shall not increase any item in such estimate for any department, office or purpose. When it shall have adopted the estimate as herein provided, the same shall be entered at large in its minutes and published in its proceedings; and the several sums in the final estimate so adopted shall be and become appropriated for the several departments, offices and purposes named in the estimate for the ensuing fiscal year ” (Report, N. Y. Senate Doc., 1896, No. 24, p. 23).
This proposal was enacted in 1898 as the first of the second class cities charters (L. 1898, ch. 182) and included the provision *592 for estimates and the council’s power to diminish estimates as recommended in the 1896 report, which became section 96 of the statute.
There was a further and general revision of the Second Class Cities Law in 1906 (ch. 473) and the power of the Common Council to reduce amounts in the estimate was retained in the same language (§75) with the same direction for the entry of the revised or approved estimate on the minutes, and the same provision that the sums ‘ ‘ shall he and become appropriated ’ ’ in those amounts (§ 76).
It was this statute that was in effect in 1915 when the present Cohoes Charter was adopted (L. 1915, ch. 130) and in its section 1 it copied verbatim the broad words of the opening section “The citizens of the state of New York,, from time to time inhabitants of the territory comprised within the boundaries of the city ”, etc., which then were (and now are) the opening provisions of the Second Class Cities Law (§ 3). The present general provisions for reducing and adopting estimates are in the Second Class Cities Law (§§ 75 and 76). These provisions appear in many other special city charters.
All this means that in Cohoes, as in many cities of the State, the Common Council has an affirmative power to diminish estimates made by the Board of Estimate and Apportionment. The Corporation Counsel, arguing in this court to sustain the order .of mandamus, makes the point that Cohoes is governed by the principles of an executive budget (Brief, Point VII, pp. 40-48). It would violate the basic principles of an executive budget if, after an estimate submitted to it had been diminished by the Common Council in accordance with the statute, the Mayor by veto or some other executive act, could put it back where it was before it was diminished.
The language of the statute indicates that it was intended that council action, in whatever form, not be subject to veto by the Mayor. The language of section 96 of the Charter is self-executing. The action of the council in approving, or approving as reduced, an annual estimate ‘ ‘ shall be entered at large in its minutes ’ ’ and thereby the estimate ‘ ‘ shall be and become appropriated ”. This language is copied exactly from the general 1896 proposal. It seems clear that the provisions of section 31 of the Charter requiring appropriations of money to be by ordinance apply only to those appropriations which the council *593 itself initiates which, of course, the Mayor may veto. The fact that Cohoes for some years, and this year on advice of the Corporation Counsel, acted also by ordinance is not a complete answer to the legal question raised by this statutory language which affects other cities than Cohoes.
In Matter of Hushion v. Barker (253 App. Div. 376 [1938]), the Second Department construed section 75 of the Second Class Cities Law as it applied to Yonkers. The holding was that the time in which it had to act having expired before it legally acted, the act of formal adoption of the budget became ministerial and could be compelled by mandamus (p. 379). There, however, the time had actually expired before the council acted. The court expressly declined to determine whether the estimate could be amended by means other than ordinance, i.e., “ the availability of which need not now be decided” (p. 378).
Judge Hiscock had this statutory language before him when he was at Special Term (Kirk v. McGuire, 32 Misc. 596 [1900]) in applying the Second Class Cities Law to Syracuse and his reading of the language led him to say “ it is the common council which finally passes upon the budget, puts it into effect and ‘ appropriates ’ the various sums of money to the various purposes therein specified. The board of estimate and apportionment cannot accomplish that end” (p. 598). There are some respects in which the council must take the Board of Estimate’s submission (e.g., it shall not diminish salaries, Cohoes Charter, § 95) and a similar limitation in the Mount Yernon Charter, in the same language as the Second Class Cities Law and Cohoes Charter, was considered in Matter of Bateman v. Mayor (247 N. Y. 250).
The Mayor vetoed both the “resolutions” of the council by which the estimate was reduced and the ordinances which undertook to levy taxes in accordance with the reduced estimate on the theory that both were ordinances. Whether they are ordinances or resolutions, it is clear that the Mayor’s veto does not and cannot have the effect of restoring the items which were eliminated. In vetoing the entire ordinance or resolution he struck the action of the council down. He did not, nor is any way pointed out by the Corporation Counsel in which he could, restore the reductions. The legal result of a general veto of this sort was an impasse in the budget-making process.
*594 The Special Term met this problem by holding that' since the time had gone by without any legal action by the council in reducing the items, the council now (after Special Term heard the case) had a ministerial, and mandatory duty, to approve the estimate as originally submitted. This is what the Appellate Division did in Matter of Hushion v. Barker (supra). But there the 30 days had run by before the council acted. Here the 30 days after the submission of the estimate had not gone by when the council acted (§ 95). The estimate was submitted by the board January 25. It was first amended by the council resolution on February 21, and all of the action of the council in several various forms was completed by February 23. The Corporation Counsel’s brief concedes that the council had until the next day, February 24, to adopt a budget (Brief, p. 25). But this was not done, says the Corporation Counsel, because the Mayor had vetoed the ordinances and resolutions adopting the budget. If the council acted within 30 days to reduce the estimate, it cannot be deprived of its power by a veto which requires additional action after 30 days. This must rest on an unreasonable construction of the statute.
The order should be reversed.
Order affirmed, etc.